Chiappone v North Shore Univ. Hosp. (2018 NY Slip Op 05569)





Chiappone v North Shore Univ. Hosp.


2018 NY Slip Op 05569


Decided on August 1, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 1, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
JEFFREY A. COHEN
COLLEEN D. DUFFY
ANGELA G. IANNACCI, JJ.


2017-07321
 (Index No. 700097/16)

[*1]Antonietta Chiappone, etc., appellant, 
v
North Shore University Hospital, respondent, et al., defendant.


Rheingold Giuffra Ruffo & Plotkin LLP, New York, NY (Edward A. Ruffo of counsel), for appellant.
Heidell, Pittoni, Murphy & Bach, LLP, White Plains, NY (Daniel S. Ratner of counsel), for respondent.



DECISION & ORDER
In an action, inter alia, to recover damages for medical malpractice, the plaintiff appeals from a judgment of the Supreme Court, Queens County (Peter J. O'Donoghue, J.), entered June 6, 2017. The judgment, upon an order of the same court dated January 9, 2017, granting the motion of the defendant North Shore University Hospital for summary judgment dismissing the complaint insofar as asserted against it, is in favor of North Shore University Hospital and against the plaintiff dismissing the complaint insofar as asserted against that defendant.
ORDERED that the judgment is reversed, on the law, with costs, the motion of the defendant North Shore University Hospital for summary judgment dismissing the complaint insofar as asserted against it is denied, the order dated January 9, 2017, is modified accordingly, and the complaint is reinstated insofar as asserted against that defendant.
In October 2009, Joseph Chiappone sustained a perforated duodenum during an endoscopic procedure performed at North Shore University Hospital (hereinafter NSUH). On July 29, 2010, Joseph Chiappone, and his wife, Antonietta Chiappone, suing derivatively, commenced an action to recover damages for medical malpractice (hereinafter Action No. 1) against NSUH and the surgeon that performed that procedure.
On or about July 5, 2013, Joseph Chiappone was again admitted to NSUH, on this occasion for, inter alia, complaints of shortness of breath, chest pains, and abdominal pain (hereinafter the second admission). During this second admission, on July 8, 2013, Joseph Chiappone suffered a seizure and fell, sustaining a fracture of the right hip that required surgery.
The parties settled Action No. 1 on June 27, 2014. Joseph Chiappone and Antonietta Chiappone executed and delivered a release that released NSUH
"and all . . . related business entities . . . and all . . . employees, physicians, [and] servants, . . . from all past, present and future [*2]claims, demands, obligations, actions, causes of action, wrongful death or bodily or personal injury claims . . . of any kind whatsoever, whether known or unknown, based upon any legal or equitable theory, . . . which the RELEASORS, their heirs, executors, administrators . . . hereafter can, shall, or may now have, or may hereafter accrue or otherwise be acquired, against RELEASEES for, upon, or by reason or any actual or alleged act, omission, transaction, practice, conduct, occurrence, or other matter . . . from the beginning of the world to the day of the date of this RELEASE" (hereinafter the release).
Joseph Chiappone died on October 11, 2014, allegedly due to complications from the injuries that occurred during the second admission. On January 5, 2016, Antonietta Chiappone (hereinafter the plaintiff) commenced this action to recover damages for medical malpractice and wrongful death relating to the second admission (hereinafter Action No. 2). NSUH moved for summary judgment dismissing the complaint insofar as asserted against it, contending that Action No. 2 was barred by the release executed by the parties as part of the settlement of Action No. 1. The Supreme Court granted the motion. A judgment was entered upon the order, and the plaintiff appeals from the judgment.
The meaning and coverage of a release necessarily depends upon the controversy being settled and upon the purpose for which the release was given (see Cahill v Regan, 5 NY2d 292, 299; Nucci v Nucci, 118 AD3d 762, 763). While a broad general release will be given effect regardless of the parties' unexpressed intentions, such "release may not be read to cover matters which the parties did not intend to cover" (Gale v Citicorp, 278 AD2d 197; see Cahill v Regan, 5 NY2d at 299; Mazzurco v PII Sam, LLC, 153 AD3d 1341, 1342; Clerico v Pollack, 148 AD3d 769, 771; Nucci v Nucci, 118 AD3d at 763; Desiderio v Geico Gen. Ins. Co., 107 AD3d 662, 663; Apfel v Prestia, 41 AD3d 520, 520-521; Hughes v Long Is. Univ., 305 AD2d 462, 462-463).
Contrary to the Supreme Court's determination, NSUH failed to establish, as a matter of law, that the release executed by the parties settling Action No. 1 was intended to preclude the plaintiff from recovering for claims that allegedly arose during and as a result of the second admission, which were not yet in dispute at the time the release was executed (see Glassberg v Lee, 82 AD3d 836, 837; Apfel v Prestia, 41 AD3d at 521; Alcantara v 603-607 Realty Assoc., 273 AD2d 329, 329-330). While the plaintiff may have been aware of the incident giving rise to Action No. 2 when she signed the release, any such awareness is insufficient, itself, to establish that the release was intended to cover any potential claims which were not the subject of Action No. 1. Accordingly, the court should have denied NSUH's motion for summary judgment dismissing the complaint insofar as asserted against it.
SCHEINKMAN, P.J., COHEN, DUFFY and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court